UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| JULIE WILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: 4:17-cv-27 |
| | ) |
| SYCAMORE SPRINGS, LLC | ) |
| a/k/a SPRINGSTONE, INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

1. Plaintiff, Julie Wiley ("Wiley"), brings this action against Defendant, Sycamore Springs, LLC a/k/a Springstone, Inc. ("Defendant"), for unlawfully violating her rights as protected by the Americans With Disabilities Act ("ADA").

## PARTIES

2. Wiley has resided within the Northern District of Indiana at all relevant times.

3. Defendant operates and conducts business within the Northern District of Indiana.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331; 42 U.S.C. § 1988; and 42 U.S.C. § 12117.

5. Wiley was an "employee" within the meaning of 42 U.S.C. § 12111(4).

6. Defendant is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A).

7. Wiley is a qualified individual with a disability, has a record of a disability, and/or was regarded as disabled by Defendant.

8. Wiley satisfied her obligations to exhaust her administrative remedies, having timely

filed a Charge of Discrimination with the Equal Employment Opportunity Commission. The EEOC issued a right-to-sue notice to Wiley. She now timely files her lawsuit.

9. Venue is proper in this Court.

## FACTUAL ALLEGATIONS

10. Defendant hired Wiley as a full-time Psychiatric Nurse (RN) on or about May 5, 2015.

11. Wiley's work performance met or exceeded Defendant's legitimate expectations at all relevant times.

12. Wiley's doctor diagnosed and treated her for severe tendinitis in her right foot in or about 2015.

13. Wiley experienced ongoing and debilitating pain in her right foot as a result of her disability.

14. Wiley's impairment substantially limited one or major life activities, including, but not limited to, walking, driving, and working.

15. Wiley advised Defendant several times of her disability, including, but not limited to, Director of Nursing Kathy Brown ("Brown"), Human Resources Manager Pam Sichts ("Sichts"), and Nurse Manager Tim Pouquette ("Pouquette").

16. A patient physically assaulted Wiley on or about July 23, 2015.

17. Wiley suffered a physical injury and was off work as a result of the assault.

18. Wiley returned to work on or about July 31, 2015.

19. Between in or about August 2015 and October 2015, Brown, Sichts, and Pouquette made negative comments to Wiley about her having PTSD.

20. The tendinitis significantly impacted her ability to walk, climb stairs, drive, and work in or about October 2015.

21. The pain had become so bad that Wiley requested permission to wear a boot on her foot at work.

22. Defendant approved her request to wear a boot at work.

23. Wiley wore a boot on her foot at work in or about October, November, and December 2015.

24. In or about November and December 2015, Defendant regularly scheduled Wiley to work three 12-hour shifts each week.

25. In or about November 2015, Wiley's doctor informed her that she would need to have surgery on her disability.

26. Wiley informed Defendant of her anticipated need for surgery on her right foot because of severe tendinitis.

27. The doctor subsequently scheduled Wiley's surgery for on or about December 9, 2015.

28. Wiley notified Defendant that she was having surgery on or about December 9, 2015, and would need leave time because of the surgery and recovery.

29. Upon learning on or about December 7, 2015, that she would need four to six weeks of recovery time, Wiley immediately notified Brown, Pouquette, and Sichts that she would need to be off until January 20, 2016.

30. Her request for extended leave constituted a request for a reasonable accommodation.

31. Wiley's doctor faxed medical paperwork to Defendant concerning Wiley's

impairment, need for surgery, need for time off, and anticipated return to work date of January 20, 2016.

32. Wiley exercised her rights under Defendant's leave of absence ("LOA") policy. The policy provided, in relevant part: "LOA may be granted for a maximum of 12 weeks of unpaid leave to be taken for an employee's own health or personal reason. Eligibility is limited to employees designated full-time, part-time and with a minimum of six months of continuous employment."

33. Wiley qualified under the LOA policy because she had worked seven months for Defendant and needed leave for her impairment.

34. Also, on or about December 7, 2015, Brown, Sichts, and Pouquette acknowledged their awareness of Wiley's disability to her.

35. Brown told Wiley not to have the surgery because she "had the surgery and still today has arthritis."

36. Pouquette told Wiley that she would look funny riding a scooter at work.

37. On or about December 9, 2015, Defendant, by email, refused Wiley's request for extended leave purportedly because "of the lateness of the request, and the timing of the days (over the holidays) requested."

38. Defendant did not engage in the interactive process with Wiley to determine if a reasonable accommodation existed.

39. Defendant did not offer a reasonable accommodation to Wiley in December 2015.

40. Wiley had surgery on her disability on or about December 9, 2015.

41. On or about December 14, 2015, Defendant communicated to Wiley: "If you wish to continue employment at Sycamore Springs, you will need (sic.) return to work on December 15,

2015. . ."

42. Defendant's LOA policy also contained a "100 percent healed" provision. The policy provided, in relevant part: "Employees returning to work must do so without restrictions as light duty is not permitted unless the leave is due to a Worker's Compensation claim."

43. Defendant fired Wiley on or about December 15, 2015.

44. In or about December 2015, Defendant employed about 10 PRN nurses, who were charged with filling in temporarily when other nurses were absent from work.

45. An employee, who is not disabled, assumed Wiley's duties and responsibilities upon her separation.

46. An employee, who had not engaged in statutorily-protected activities, assumed Wiley's duties and responsibilities upon her separation.

47. Defendant fired Wiley because of her disability, perceived disability, record of a disability, and/or engagement in statutorily-protected activities.

48. Defendant has accorded more favorable treatment to similarly-situated employees, who are not disabled, do not have a record of a disability, are not regarded as disabled by Defendant, and/or have not engaged in statutorily-protected activities.

49. All reasons proffered by Defendant for adverse actions taken by it regarding Wiley's employment are pretextual.

50. Wiley has suffered injury and harm as a result of Defendant's unlawful actions, including, but not limited to, lost wages, lost benefits, emotional distress, inconvenience, humiliation, embarrassment, anger, disgust, frustration, and similar emotions as a result of Defendant's unlawful acts.

## COUNT I

### DISABILITY DISCRIMINATION – ADA

51. Wiley hereby incorporates paragraphs 1-50 of her Complaint.

52. Wiley asked for a reasonable accommodation in or about December 2015.

53. Defendant did not provide a reasonable accommodation to Wiley in or about December 2015, let alone engage in the interactive process with her.

54. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Wiley's rights as protected by the ADA.

## COUNT II

### DISABILITY DISCRIMINATION – ADA

55. Wiley hereby incorporates paragraphs 1-55 of her Complaint.

56. Defendant took adverse employment actions against Wiley because of her disability, her record of a disability, and/or its perception of her being disabled.

57. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Wiley's rights as protected by the ADA.

## COUNT III

### RETALIATION – ADA

58. Wiley hereby incorporates paragraphs 1-58 of her Complaint.

59. Wiley asked for at least one reasonable accommodation.

60. Defendant fired Wiley in retaliation for her engagement in statutorily-protected activities.

61. Defendant's unlawful actions were intentional, willful, and done in reckless disregard

of Wiley's rights as protected by the ADA.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, Julie Wiley, by counsel, respectfully requests that this Court find for her and order that:

1. Defendant reinstate Wiley to the same position, salary, and seniority, or pay front pay and benefits to her in lieu of reinstatement;

2. Defendant pay lost wages and benefits to Wiley;

3. Defendant pay compensatory and punitive damages to Wiley;

4. Defendant pay pre- and post-judgment interest to Wiley;

5. Defendant pay Wiley's attorneys' fees and costs incurred in litigating this action; and

6. Defendant pay to Wiley any and all other legal and/or equitable damages that this Court determines appropriate and just to grant.

Respectfully submitted,

*s/ John H. Haskin*
John H. Haskin, Attorney No. 7576-49

*s/ Bradley L. Wilson*
Bradley L. Wilson, Attorney No. 21154-49

Attorneys for Plaintiff
Julie Wiley

JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street, 2nd Floor
Indianapolis, Indiana  46204
Telephone:   (317)955-9500
Facsimile:    (317)955-2570
Email:         jhaskin@jhaskinlaw.com
                    bwilson@jhaskinlaw.com

## **DEMAND FOR JURY TRIAL**

Plaintiff, Julie Wiley, by counsel, respectfully requests a jury trial for all issues deemed triable.

        Respectfully submitted,

        *s/ John H. Haskin*
        John H. Haskin, Attorney No. 7576-49